[Civ. No. 46666. Second Dist., Div. Three. Jan. 28, 1976.]

CAROLYN A. McDOWELL, Plaintiff and Appellant, v.
JOSEPH ORSINI, Defendant and Respondent.

952

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Appellant.

Jack D. Scott and Marcus Crahan, Jr., for Defendant and Respondent.

## Opinion

**POTTER, J.**—This is an appeal by petitioner Carolyn A. McDowell from an order re child visitation and support made in a proceeding initiated under the revised Uniform Reciprocal Enforcement of Support Act of 1968 (Code Civ. Proc., § 1650 et seq.) Said order dealt with the right of respondent Joseph D. Orsini, a California resident, to reasonable visitation with the minor child of the parties and with his obligation to support said child. Both the petitioner and the child reside in the State of Pennsylvania, and the current proceeding was initiated by a verified complaint for support filed January 16, 1974, in that state. The petition sought enforcement of a prior support order of August 23, 1971, made by the Superior Court of California for Los Angeles County, requiring respondent to pay $55 per month for the support of said child. The petition stated that from the date of said order respondent had only paid $110 for the support of the minor child and sought a continuation of the existing support order plus an order for payment on arrearages.

Examination of the records of the Superior Court of Los Angeles County relating to the matter of enforcement of respondent's obligation to support said child discloses two reciprocal enforcement of support files.[1] One of them, No. RESL 74321, was initiated by petition filed July 1, 1971, at a time when petitioner resided in the State of New York. The original petition was supported by a declaration setting forth the basis for the existence of an obligation under the law of California, pursuant to Code of Civil Procedure section 1655,[2] including the facts (1) that petitioner and her child had been abandoned by respondent, (2) that respondent had failed to contribute to their support, and (3) that petitioner's gross earnings were $115 per week. In response to this petition, respondent filed a questionnaire disclosing his weekly salary was $107 from which he had $84 as take-home pay. The questionnaire also claimed that respondent had $386.50 regular monthly expenses. A minute order of August 23, 1971, recited that all the above described documents had been received in evidence and considered, and that the court found (1) the minor child of the parties was partially dependent upon respondent for support, and (2) a reasonable amount to be

---

[1] Pursuant to rule 12 (a) of the California Rules on Appeal, this court has caused the original superior court files in both these proceedings to be transmitted to this court and made a part of the record on this appeal.

[2] Code of Civil Procedure section 1655 provides as follows: "Duties of support arising under the law of this State, when applicable under Section 1670, bind the obligor, present in this State, regardless of the presence or residence of the obligee."

contributed by respondent for the support and maintenance of said minor in view of his present ability was $55 per month. Said order of August 23, 1971, further provided that the payments be made to the office of the Court Trustee for the County of Los Angeles for transmittal to the Family Court of petitioner's county of residence in New York.

On March 14, 1973, a certificate in re contempt was executed by the office of the trustee, stating that the total which had been paid pursuant to said order of August 23, 1971, was $54.90, and that $935.10 remained unpaid and was delinquent. Eight counts of contempt based on payments accruing the 23d of each month from July 23, 1972, through February 23, 1973, which were delinquent, were charged. An order to show cause re contempt was issued based upon such certificate. Attempts to serve the order to show cause were unsuccessful, and on May 16, 1973, a new certificate and order to show cause, showing $1,045.10 delinquency and specifying eight counts of contempt in respect of payments due September 23, 1972, through April 23, 1973, was issued. Service of this order to show cause was effected, and a hearing thereon took place on November 7, 1973. At this hearing respondent was found guilty of eight counts of contempt. He was sentenced to serve five days in the county jail on each count, the sentences to run consecutively. The sentences were suspended for a period of one year, and respondent was placed on summary probation upon the condition that he comply with his representation to the court that he would keep current "without fail hereafter plus pay $10 per month on the arrears." The minute order of that date also indicated the following: "Respondent represents to the Court the petitioner is interfering with his rights of reasonable visitation and does not allow him communication. It is requested that the initiating state make an investigation concerning this matter and report to the District Attorney of Los Angeles County."

The concluding entry in the file in proceeding No. RESL 74321 is an order of April 15, 1974, as follows: "RESL 74321 is dismissed in favor of RESL 86495. Any arrears accruing under RESL 74321 is to be transferred to RESL 86495."

It appears, therefore, that the August 23, 1971, order of the superior court of California referred to in the initiating complaint for support in proceeding No. RESL 86495 was the August 23 order in No. RESL 74321. The new complaint, which indicated that the petitioner had moved from New York to Pennsylvania, alleged that the marriage had

been dissolved by a decree of divorce.[3] After a bench warrant had been issued for the apprehension of respondent, a hearing in No. RESL 86495 was conducted July 2, 1974. There is no record of the proceedings on that date except a minute order as follows:

"Counsel is with the court in chambers.

"Counsel for the Respondent is ordered to prepare an attorney order and submit to Counsel for the Petitioner for approval as to form and submit to the court."

Though a reporter's transcript of the proceedings was requested, none was produced inasmuch as there was no testimony and apparently no exhibits were received.

Pursuant to the court's direction, counsel for respondent prepared the order for child visitation and support which is the subject of this appeal. The original of the order was served upon the district attorney's office with a request for approval as to form on July 9, 1974. On July 12, 1974, the district attorney advised by letter of that date that he could not approve the proposed order. As far as pertinent to this appeal, the reason given therefor was the following: "we do not *stipulate* to the order or to lack of arrearage." This was a reference (1) to the recitation in the order that: "It is stipulated by counsel that Respondent, JOSEPH D. ORSINI is ordered to pay as and for child support the sum of $55.00 per month for the benefit of the minor child of the parties, ROBERT, born November 2, 1966" and (2) to the failure of the order to deal with the arrearage. Said letter of July 12 shows a copy to "Clerk of the Superior Court, Department 2."

By letter of July 25, 1974, counsel for respondent also advised the court of the district attorney's refusal to sign the order and requested that the court "sign it unless the District Attorney's Office takes the necessary steps within the statutory time." Thereafter, on August 9, 1974, the court signed the order in the form submitted.

The order recited that the court and counsel had conferred in chambers and that it was "based upon representations of counsel,

---

[3] An appendix to respondent's brief indicates, and petitioner does not deny, that this decree was entered in the Supreme Court of New York on February 2, 1972, and that it did not deal either with the custody of the minor child or with respondent's right to visitation.

stipulated facts and the papers, files and pleadings." The portions of the order to which exception is taken are as follows:

"Respondent is given the right of reasonable visitation with the minor, ROBERT, and said right of reasonable visitation is defined as, at least, including the right to the physical possession of the minor for the month of August, or such other period as the parties may mutually agree, in each year beginning in 1974 with said visitation to be in the State of California, if Respondent so desires and pays the complete air fare, both ways, for the minor.

"The support heretofore ordered shall be allocated as follows:
$5.00 per month as 'basic support'.
$50.00 per month as 'additional support'.

"All support shall be payable on the 15th day of each month commencing July 15, 1974, and continuing thereafter until said child reaches majority, becomes self-supporting or further order of Court.

"IT IS FURTHER ORDERED, pursuant to Civil Code Section 4702(a) that the basic child support payments ordered shall be made through the office of the Court Trustee and that to each monthly payment of $5.00 there shall be added the service charge of 2% as required by law, amounting to .10 cents, making a total monthly payment of $5.10.

"As additional child support, Respondent is ordered to pay into a blocked account at BANK OF AMERICA, 1602 West 25th, San Pedro, California, the sum of $50.00. Respondent shall deposit same in Respondent's name as Trustee for said minor in BANK OF AMERICA and shall deliver to said depository two copies of the Order To Deposit Money, which Order is being signed contemporaneously herewith. Respondent shall make no withdrawal from said account without first obtaining an order of this Court authorizing same. Bond is hereby waived. The amount so impounded to be paid by Respondent to Petitioner as additional child support on September 1 of each year commencing September 1, 1974, only if the Respondent has enjoyed the physical possession of the child in August of each year or such other period as may be selected by the parties, provided the Respondent desires to have said child and pays the expense for same and that Petitioner does nothing to prevent the Respondent from enjoying the physical possession of the child and cooperates in seeing that the child is transported to Respondent as herein provided.

"If Petitioner has refused to allow the visitation and physical custody as set forth herein, then Respondent may, on September 1, of each year, withdraw said sum and use it for his own benefit."

Notice of appeal from said order was filed December 12, 1974.[4] The appeal by the Attorney General is authorized by Code of Civil Procedure section 1696.

## Contentions

Petitioner contends that the trial court acted in excess of jurisdiction in issuing an order granting respondent visitation rights and in conditioning respondent's obligation to pay child support upon petitioner's compliance with such custody order.

Respondent contends to the contrary (1) that the appeal is in effect a judgment roll appeal in which evidence supporting the judgment is presumed to exist, (2) that the order is in effect "a consent judgment" in view of petitioner's failure to raise any objection thereto in the trial court, (3) that the court had jurisdiction to determine the amount of support despite the absence of the minor child, and (4) that the award of $5 "basic support" was within the court's broad discretion; thus, the "additional support" was a proper bonus to induce petitioner to grant reasonable visitation rights.

After review of the entire record in both proceedings under the Uniform Reciprocal Enforcement of Support Act, we are of the opinion that petitioner's contentions must be upheld and the order set aside.

1.   *This Is Not a Judgment Roll Appeal*

■   The notice to prepare record on appeal specified the following:

"1. A Reporter's Transcript of the oral proceedings of July 2, 1974;

"2. All documents contained in the court file including, but not limited to, the Complaint for Support, the clerk's minutes and the judgment;

"3. All exhibits and other documents considered by the court including, but not limited to, Respondent's Questionnaire and all documents from the initiating jurisdiction."

---

[4] It would appear that this appeal is timely inasmuch as the record discloses no notice of entry of the formal order. (Cal. Rules on Appeal, rule 2 (a) and (b).)

If any evidence had been received by the trial court, such designation of record on appeal would have resulted in its incorporation in the record. No reporter's transcript was produced because there were no proceedings during which evidence was received. No exhibits were transmitted because there were none. The foregoing is confirmed (1) by the minute order of July 2, 1974, which recites as the basis for the disposition simply "Counsel is with the court in chambers," and (2) by the order of August 9, 1974, which states that the order is "based upon representations of counsel, stipulated facts and the papers, files and pleadings."

The normal place to hear evidence and receive exhibits is in open court where a report of the testimony may be made and a record kept of the exhibits received. Read together, the minute entry and the formal order disclosed that there was no evidence received and that the sole basis of the order was the purported stipulation. The rule that "[i]n a judgment roll appeal every presumption is in favor of the validity of the judgment and any condition of facts consistent with its validity will be presumed to have existed . . ." (*Wheelright* v. *County of Marin,* 2 Cal.3d 448, 454 [85 Cal.Rptr. 809, 467 P.2d 537]) has no application.

## 2. *Petitioner Did Not Consent to the Order*

Respondent's contention "that the order appealed from was, in practical if not legal effect, a consent judgment" is based upon petitioner's alleged failure to object in the trial court to the provisions of the order which she now attacks. Respondent relies upon the rule "that questions not raised in the trial court will not be considered on appeal." (5 Cal.Jur.3d, Appellate Review, § 480, p. 117.) Though the soundness of this rule cannot be questioned, it is not applicable in view of the record in this case.

The mandatory duty of the prosecuting attorney in the responding court is limited "to the enforcement of support becoming due on and after the date the reciprocal complaint is received in this state and arrearages accrued under a reciprocal order entered in this state or any other state." (Code Civ. Proc., § 1680.) There is nothing in the record to suggest that the prosecutor's representation of petitioner extended beyond this mandatory duty. Thus, if he had elected to take no action in respect of the provisions of the order granting respondent visitation rights and conditioning the payment of child support upon compliance therewith, a waiver of petitioner's rights in that respect would not result.

The prosecutor, however, did not adopt that stance. The minute order of July 2, 1974, by limiting the approval by counsel for petitioner to "approval as to form," clearly implied that the substance of the order was imposed upon respondent over objection of counsel. Even approval as to form was withheld by respondent's counsel, and the letter of July 12, 1974, to the court clearly indicated that one of the objections to form was the erroneous recitation therein suggesting that the order was based upon a stipulation.

It is clear, moreover, that this objection was well taken. The single fact allegedly stipulated, to wit that "JOSEPH D. ORSINI is ordered to pay as and for child support the sum of $55.00 per month for the benefit of the minor child of the parties," did not support the order placing a condition upon the obligation to pay all but $5 of it. In any event, such stipulation was neither embodied in an agreement filed with the clerk nor entered upon the minutes of the court. Until so entered, it was not binding and could be revoked at any time before it was executed. As our Supreme Court said in *McLaughlin* v. *Clausen,* 116 Cal. 487, 491 [48 P. 487]:

"Section 283 of the Code of Civil Procedure provides: 'An attorney and counselor shall have authority: 1. To bind his clients in any of the steps of an action or proceeding by his agreement filed with the clerk *or entered upon the minutes of the court, and not otherwise.'*

"It is not pretended that there was any agreement filed with the clerk or entered upon the minutes of the court in regard to the continuance of this case pending the decision in the proposed Witmer Brothers Company case; and if any verbal stipulation as to the matter was made, it was executory and not binding upon either party. (*Borkheim* v. *North British etc. Ins. Co.,* 38 Cal. 623.) Verbal stipulations with reference to proceedings in pending actions cannot be regarded except so far as they are admitted by the parties against whom they are sought to be enforced, or have been wholly or in part executed. (*Reese* v. *Mahoney,* 21 Cal. 305; *Smith* v. *Whittier,* 95 Cal. 279 [30 P. 529].) And if a party against whom a verbal stipulation is invoked denies that such a stipulation was made, the court will not hear the parties for the purpose of settling the dispute. (*Johnson* v. *Sweeney,* 95 Cal. 304 [30 P. 540].)" (Italics added.)

It is thus apparent that the prosecutor as counsel for petitioner at all times maintained a position of opposition to the disposition which the court had indicated was forthcoming. There was no waiver of respondent's objections to the propriety of such disposition.

### 3. The Court Had No Jurisdiction to Make an Order With Respect to Visitation

The order of August 9, 1974, purports to deal with the matter of custody of the parties' minor child Robert. It provides in this respect that "Respondent is given the right of reasonable visitation with the minor." Reasonable visitation is defined therein as including "the right to physical possession of the minor [in California, if respondent pays the air fare] for the month of August, or such other period as the parties may mutually agree."

This provision was beyond the power of the court because (a) it was made without any written application therefor or other advance notice to petitioner that any such relief was sought, (b) there were no circumstances justifying the exercise of jurisdiction over the child who neither resided in nor was present in California, and (c) the purpose of the proceeding was limited to enforcing the duty of support arising under the laws of this state against an obligor present in this state (Code Civ. Proc., § 1655).

The absence of an application constituting reasonable notice to petitioner and affording her an opportunity to be heard is by itself fatal to the validity of the order relating to custody and visitation rights.

As our Supreme Court said in *In re B. G.*, 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244]: "Since the interest of a parent in the companionship, care, custody, and management of his children is a compelling one, ranked among the most basic of civil rights (*Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558-559, 92 S.Ct. 1208]; *Lois R.* v. *Superior Court* (1971) 19 Cal.App.3d 895, 901 [97 Cal.Rptr. 158]), the state, before depriving a parent of this interest, must afford him adequate notice and an opportunity to be heard. (*In re Moilanen* (1951) 104 Cal.App.2d 835, 842 [233 P.2d 91]; *In re Spiers* (1936) 15 Cal.App.2d 487, 491 [59 P.2d 838].)"

This requirement is, moreover, made explicit by section 5153 of the Civil Code, a part of the Uniform Child Custody Jurisdiction Act, which specifies the conditions under which "[a] court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination." (Civ. Code, § 5152.) Section 5153 provides: "Before making a decree under this title, reasonable notice and opportunity to be heard shall be given to the contestants, any parent

whose parental rights have not been previously terminated, and any person who has physical custody of the child. If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to Section 5154."

An order granting respondent visitation rights of one month's duration during which he would have "physical possession of the minor" patently affects petitioner's interest in the companionship, care, custody and management of the child. Before any such order was made, petitioner was entitled to reasonable notice and an opportunity to be heard with respect thereto. She received neither.

In addition, there was no basis for the court's exercise of jurisdiction over the custody of the parties' minor child even if reasonable notice had been given petitioner. It is apparent from the record that the child neither resided in nor was present in the State of California. He resided with petitioner in Pennsylvania.

With exceptions not here applicable,[5] jurisdiction to adjudicate custody of children has been held to depend upon such children either being domiciled in or physically present in the jurisdiction. (See *Sampsell* v. *Superior Court,* 32 Cal.2d 763, 779 [197 P.2d 739]; *Ferreira* v. *Ferreira,* 9 Cal.3d 824, 833 [109 Cal.Rptr. 80, 512 P.2d 304].)

The requisites for the exercise of jurisdiction over child custody are now stated in Civil Code section 5152 (added by Stats. 1973). This section generally limits the exercise of jurisdiction to cases in which this state is the "home state" of the child or in which the child is physically present here. The other bases for the exercise of jurisdiction require showing that "the child and at least one contestant, have a significant connection with this state," that "no other state would have jurisdiction," or that "another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum," and "it is in the best

---

[5] Jurisdiction over custody matters has been held to continue where the court exercising jurisdiction has previously made a custody order, despite the removal of the children from the jurisdiction and their domicile elsewhere. (*Davis* v. *Davis,* 177 Cal.App.2d 75 [1 Cal.Rptr. 923].) The record in this case, however, shows clearly that no California court has previously made any order relating to the custody of these children.

In addition, submission by both parents to the jurisdiction of the court over the matter of custody has in some cases been held to sustain such jurisdiction. (See *Mattos* v. *Correia,* 274 Cal.App.2d 413, 419 [79 Cal.Rptr. 229].) However, as demonstrated *infra,* petitioner did not submit to the jurisdiction of this court with respect to the matter of custody by filing her petition for support under the Uniform Reciprocal Enforcement of Support Act.

interest of the child that this court assume jurisdiction." There is nothing in the record in this proceeding to indicate that any of the above circumstances exist.

Petitioner's application for support pursuant to the Uniform Reciprocal Enforcement of Support Act did not constitute a submission to the jurisdiction of the California courts with respect to the matter of custody. This is made clear by the provisions of section 1690 of the Code of Civil Procedure which provides: "Participation in any proceeding under this title does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding."

The subject of inquiry in a proceeding under the act is limited. As this court said in *Clark* v. *Clark,* 246 Cal.App.2d 619, 622 [54 Cal.Rptr. 875]: "The single issue to be resolved in this action brought under the 'Uniform Reciprocal Enforcement of Support Act' is the question of entitlement of dependents to support by one legally liable to support them." 

Subsequent to the decision in *Clark,* the Legislature amended section 1694 of the Code of Civil Procedure, specifically excluding consideration of custody matters. The final sentence of that section now reads: "The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court."

We, therefore, conclude that the provision of the order granting respondent visitation and defining such right of visitation was beyond the jurisdiction of the court.

4.  *The Provision Conditioning Petitioner's Receipt of Support for the Minor Child Upon Compliance With the Order for Visitation Was an Abuse of Discretion*

The prior order of the superior court of August 23, 1971, in No. RESL 74321 established $55 per month as.the "reasonable amount to be contributed by the respondent toward the support and maintenance of said dependent." By further order of the superior court in said proceeding on November 7, 1973, full compliance with this order was made a condition of respondent's probation upon suspension of his sentence of 40 days for contempt. There is no record of any other competent evidence having been received by the court bearing upon the

amount of such support except the alleged stipulation recited in the order of August 9, 1974. The recited stipulation does not support an order reducing the award to an amount less than $55 per month. As above pointed out, counsel for petitioner denied joining in the stipulation. In any event, the stipulation as stated was for $55 per month support; it did not divide the support into $5 per month "basic support" and $50 per month "additional support" payable upon the condition respondent's visitation rights were recognized.

The effect of the order was to continue the existing level of support which had been found reasonable but to condition receipt of 90 percent of such reasonable support upon petitioner's full cooperation in affording respondent the newly created visitation rights. Respondent's contention, therefore, that the order may be sustained as an order establishing reasonable support in the amount of $5 per month cannot be upheld, and we need not consider whether it would be an abuse of discretion to condition payment of some amount in excess of reasonable support upon petitioner's full cooperation with the visitation order.

The provision of the order conditioning petitioner's receipt of child support upon noninterference with the custody rights granted therein violates the policy of this state embodied in the Revised Uniform Reciprocal Enforcement of Support Act of 1968 and in decisions of the appellate courts of this state strongly favoring enforcement of the child support obligation.

Section 1694 of the Code of Civil Procedure provides in pertinent part that in any hearing for civil enforcement of the obligation of support pursuant to the Revised Uniform Reciprocal Enforcement of Support Act, "[t]he determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court." This provision, which also is incorporated in the Pennsylvania Act, constitutes a strong declaration of policy against defeating the right of a minor child to support on the basis of one parent's interference with custody or visitation rights of another.

The reason for such policy is well expressed in the opinion of this court in *McNabb* v. *McNabb,* 47 Cal.App.2d 623 [118 P.2d 869]. In that case, the husband resisted issuance of an execution to collect unpaid child support on the ground that the wife had removed the child from

the jurisdiction in violation of his rights of visitation. Denying this contention, the court said (47 Cal.App.2d at pp. 625-626):

"Defendant first questions the propriety of the trial court's order for the issuance of an execution. He urges that plaintiff was in contempt of court in taking the child outside of this jurisdiction even though no order forbidding her to do so was ever made, and further suggests that by depriving him of the opportunity for companionship with his child plaintiff had forfeited any right to collect the payments ordered. It is not claimed that defendant has not at all times been able to make the payments as ordered, and it is evident from the record before us that it was and is his duty to support the minor child of the parties. The order was made for the benefit of the child, not of the plaintiff.

". . . . . . . . . . . . . . . . . . .

"It doubtless would have been wiser for the plaintiff to have sought authorization of the court before removing the child from this jurisdiction, thus enabling defendant to offer additional support to plaintiff or to make such showing as he might deem proper in opposition to her plan to seek temporary residence elsewhere. Her failure to seek such authorization was not in violation of any order of the court. While the law is solicitous of parental rights and will appropriately safeguard and enforce even that pathetic remnant of a once happy relationship which is called 'the right of reasonable visitation,' *no case has been brought to our attention which places that right of a deprived parent above the right of the child to have necessary maintenance,* the security of an adequate home and where possible, especially during the tender pre-school years, the daily companionship of a mother." (Italics added.)

A similar view is expressed in *Williams* v. *Williams,* 8 Cal.App.3d 636 [87 Cal.Rptr. 754], in which a husband claimed an offset of sums due him from his wife against arrearages in child support payments. Denying the right to such offset, the court said (8 Cal.App.3d at p. 640): "There are, moreover, other significant reasons why defendant may not set off the alleged debt against child support arrearages. Code of Civil Procedure section 440 contemplates compensated cross-demands *by one party against the other.* Indeed, child support is not the type of cross-demand contemplated by section 440 because *the obligation is due to the child rather than the mother.* If it be considered a debt it is, in essence, a debt owing to the child since a father's duty to support his minor children is a continuing obligation 'during the minority of the children of the

marriage.' (*Estate of Goulart,* 218 Cal.App.2d 260, 263 [32 Cal.Rptr. 229, 6 A.L.R.3d 1380]; Civ. Code, § 138.) In essence, the parent, to whom such support is paid, is but a mere conduit for the disbursement of that support. Finally, the very nature of child support gravitates against the allowance of the setoff sought. *Such support is strongly favored in the law and statutes providing for it are to be liberally construed to promote their purpose of protecting the family.* (See *Estate of Filtzer,* 33 Cal.2d 776, 783 [205 P.2d 377]; *Harlan* v. *Harlan,* 154 Cal. 341, 350 [98 P. 32].) To allow the offset sought by defendant would frustrate both this purpose and the trial court's support order, since it would allow him to use child support funds to maintain property held in common by him and plaintiff." (Italics added.)

*Ernst* v. *Ernst,* 214 Cal.App.2d 174 [29 Cal.Rptr. 478], reversed an order modifying the provisions for support of minor children in an interlocutory decree of divorce. The decree awarded custody of the children to the wife, gave the husband "the right of reasonable visitation," and ordered the husband to pay as support $50 per month per child, plus one-half the cost of medical and hospital insurance. The wife took the children from California to Florida without advance notice to the husband and without his consent. The husband sought modification to terminate the order for support " 'until plaintiff returns them to this court's jurisdiction.' " (214 Cal.App.2d at p. 175), alleging as changed conditions the fact that as a result of the wife's conduct, the husband was unable to visit with the children. The trial court ordered that the husband not be required to pay plaintiff the $50 per month child support " 'until such time as plaintiff returns said children to the jurisdiction of this court, i.e., the County of Los Angeles, State of California.' " (214 Cal.App.2d at p. 177.) In reversing the decree, the court said (214 Cal.App.2d at pp. 178-179): "(3) We feel that the order of modification loses sight of the primary consideration as to what is for the best interests of the two children. The original decree impliedly found that this interest was best served by maternal custody and with the father contributing the prescribed amount for the support of the children. Neither in allegation nor in evidence were changes in conditions shown to have taken place warranting any modifications of these basic findings which were made by the court at the time of granting the interlocutory decree; nor does the order of modification refer to them. Whatever other remedy may be proper, on a more full showing with respect to changes which have taken place since the interlocutory decree and the reasons therefor, we *do not regard an order depriving the children of support for an*

*alleged fault of the mother* (especially when such fault is unproven) *as a proper exercise of the court's discretion in such matters."* (Fn. omitted, italics added.)

*Clark* v. *Clark,* 246 Cal.App.2d 619 [54 Cal.Rptr. 875], is consistent with the above authorities. In that case, the husband appealed from an order, made under the Uniform Reciprocal Enforcement of Support Act, requiring him to pay $125 per month for the support of his three minor children. The husband objected to the petition upon the ground that he had been given custody of the minor children by a judgment of divorce rendered by the Los Angeles Superior Court. The wife appeared in the divorce proceeding but later defaulted. The children had remained at all times "in the east in the physical custody of plaintiff [wife]." (246 Cal.App.2d at p. 621.) Though the court noted the absence of any evidence as to why the children were in the east, and concluded on this basis that it was "just as logical to infer that defendant has voluntarily left the children with plaintiff as to infer, as defendant would have us, that she has retained the children without right or authority" (246 Cal.App.2d at p. 622), such conclusion does not appear to be the basis of the court's decision. As stated therein, the basis of such decision was the limited function of the responding court under the Uniform Reciprocal Enforcement of Support Act. The court said (246 Cal.App.2d at pp. 622-623):

*"The single issue to be resolved in this action brought under the 'Uniform Reciprocal Enforcement of Support Act' is the question of entitlement of dependents to support by one legally liable to support them.* 'The support law is designed to enable a dependent in one state to secure money for support from a person residing in another state who is legally liable for the support of the dependent. Its purposes are to improve and extend by reciprocal legislation the enforcement of duties of support.' (*Smith* v. *Smith,* 125 Cal.App.2d 154, 156 [270 P.2d 613].) (See also annotation and supplement service on reciprocal support laws in 42 A.L.R.2d 768.)

"	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.	.

"In the instant case, the 'responding jurisdiction,' the Los Angeles Superior Court, has acted by ordering defendant to make support payments to fulfill his obligation of support. No basis is shown to upset its findings. The mere fact the court made its order when there was a decree outstanding which recited that defendant was entitled to the custody of the children, without more, is not, we conclude, a sufficient ground for reversing the support order." (Italics added.)

We, therefore, conclude that the order improperly conditioned respondent's obligation to support his minor child upon petitioner's affording him the visitation rights described in the order.

## Disposition

In view of its inclusion of the provisions (a) granting respondent specific rights of reasonable visitation, and (b) conditioning respondent's obligation to pay reasonable support upon petitioner's cooperation with such visitation, the order must be reversed in toto. Deletion of the offending portions of the order would not be fair to either party.

Petitioner sought an order including not only the obligation of future support but also payment of the arrearage resulting from respondent's failure to comply with prior orders. The order appealed from makes no disposition of the latter portion of her claim. She did not join in a stipulation limiting her claim to future support. That portion of her claim relating to the arrearage must, therefore, be adjudicated.

It would, moreover, be unfair to respondent to simply strike the offending provisions of the order. He was entitled to a hearing as to whether the prior order for $55 a month should be modified. As our Supreme Court said in *Worthley* v. *Worthley*, 44 Cal.2d 465, 472 [283 P.2d 19]: "In proceedings commenced pursuant to the provisions of that act, the California courts . . . must afford the defendant an opportunity to litigate the issue of modification." It is apparent that any stipulation tendered by respondent as to the amount of the support order was conditioned upon his enjoying visitation rights. In any event, petitioner's rejection of the stipulation renders it no longer binding upon respondent. In any new hearing of the matter, the amount of support reasonably payable by respondent for the future, as well as his obligation to make payment on account of arrearage, shall be determined by the court upon the basis of the prior orders and such evidence as may be tendered by the parties.

The order appealed from is reversed. The case is remanded for further proceedings consistent with the views above expressed.

Allport, Acting P. J., and Cobey, J., concurred.